## A97A0531. JOHN CRANE, INC. v. WOMMACK.
(489 SE2d 527)

RUFFIN, Judge.

Edgar Wommack sued John Crane, Inc. ("Crane") for injuries he allegedly sustained from his exposure to asbestos contained in Crane's packing material. Wommack alleged, inter alia, that Crane knew or should have known about the hazards posed by the asbestos and that Crane was negligent in failing to warn him of those hazards. Following trial, a jury returned a verdict in favor of Wommack. Crane appeals from the denial of its motions for directed verdict and new trial. For reasons which follow, we affirm.

1. We note initially that Crane's brief is in violation of Court of Appeals Rule 27 (c) (1), which provides that "[t]he sequence of argument or arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly." Although Crane enumerates eleven errors, its brief contains only seven listed arguments which do not follow the order of the enumerations and which are not numbered.

Rule 27 (c) (1) is more than a mere formality. It is a requirement which this Court imposes to ensure that all enumerations of error are addressed and to facilitate review of each enumeration. By failing to comply with the rule, Crane has hindered the Court's review of his assertions and has risked the possibility that certain enumerations will not be addressed. Accordingly, to the extent that we are able to discern which of the enumerations are supported in the brief by citation of authority or argument, we will address those enumerations. Pursuant to Court of Appeals Rule 27 (c) (2), however, all other enumerations will be treated as abandoned.

2. Crane asserts that the trial court erred in denying its motions for a directed verdict and new trial because there was no evidence that (1) Crane knew or should have known of any hazard with respect to asbestos packing; (2) Crane had any duty to warn Wommack of any hazards; (3) Crane's asbestos packing released any respirable asbestos fibers; and (4) Crane's packing was a substantial contributing factor of his disease.

" 'Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. . . . The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for directed verdict [and] new trial . . . will not be disturbed.' . . . [Cit.]" *Southeastern Security Ins. Co. v.*

*Hotle*, 222 Ga. App. 161, 162 (1) (473 SE2d 256) (1996). Because the same standard is used to review Crane's enumerations concerning the trial court's denial of its motions for directed verdict and new trial, we will consider them together.

Viewed in a light most favorable to upholding the verdict, the evidence at trial showed as follows. Wommack worked as a pipefitter at ITT Rayonier from 1958 to 1973. During his employment there, Wommack used various types of packing material to prevent leaking around pressurized valves and other pipe fittings. Wommack testified that among these various types of packing materials, he used asbestos packing to contain steam or high-temperature water, and that he specifically remembered using Crane's asbestos packing "in the late '50s and '60s." Wommack further stated that it was common knowledge among pipefitters that the packing contained asbestos and that he knew it was Crane's packing by the name on the box and the paper in which it was wrapped.

George McKillop, a former product manager of Crane's packing division, acknowledged that Crane sold asbestos packing. In fact, the evidence showed that Crane started manufacturing products containing asbestos circa 1930, that the packing products at issue contained between 35 and 55 percent asbestos, and that Crane first put warning labels on the products in 1983. McKillop testified that based on Wommack's job description and his testimony that he used Crane's packing, he believed Wommack would have used two different asbestos packings sold by Crane.

The evidence further showed that Wommack became exposed to the asbestos fibers in the packing while removing old packing from pipes and installing new packing. Wommack testified that when he removed old packing "if the packing wasn't in real bad shape, you could take a packing puller, which looked like a corkscrew, and you could screw it down in the packing and pull it out." On some occasions, however, "if the packing had been there a long time, . . . it would be so brittle that the corkscrew wouldn't pull it out, it would break up inside the gland and you would have to just dig it out with some type of pick, sharp object that you could gouge it out with. . . . [S]ome of it was in really bad shape, it would crumble up, and you would have to take an air hose with a nozzle on it and just blow the particles out after you would get it broke [sic] up." Wommack stated that these very fine particles, which he could see, would become airborne and that this happened throughout his years as a pipefitter. Wommack was sure that some of the old packing he removed was Crane's because it was from valves he had previously packed. According to Wommack, he was also exposed to asbestos when he installed new packing. He stated that if the packing was not the correct length he would cut it with a hacksaw and "some fiber come off of it [sic] . . .

like if you sawed a piece of lumber with it."

In 1993, due to concern that he may have developed an asbestos-related lung disease, Wommack went to see Dr. Richard Saleeby. Based on his examination and various tests and X-rays, Dr. Saleeby subsequently diagnosed Wommack as having asbestosis and asbestos-related pleural changes. Dr. Saleeby further concluded that these conditions resulted from Wommack's exposure to asbestos in his work. Dr. Saleeby's diagnosis was confirmed at trial by testimony from two other physicians and two pathologists who examined Wommack's medical records and samples of Wommack's lung tissue.

(a) Wommack met his burden of proving that Crane knew or should have known of hazards associated with the asbestos contained in its packing when the packing was used in a foreseeable manner. See *Bagley v. CSX Transp.*, 219 Ga. App. 544, 545 (1) (465 SE2d 706) (1995); *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 335-336 (2) (319 SE2d 470) (1984); *Talley v. City Tank Corp.*, 158 Ga. App. 130, 137 (3) (279 SE2d 264) (1981).

The evidence showed that reports concerning dangers associated with the industrial use of asbestos were published in the United States in the 1930s. By 1964, as many as 1,000 studies were published concerning asbestos and asbestos-related diseases. According to one expert, publications concerning the hazards of asbestos were disseminated to asbestos-related industries, were published in book form, and were available to read. The expert stated his opinion that the hazards of asbestos would have been "known to all industries working with asbestos" and that these industries and "[a]nybody who could read the word asbestos" should have known in 1938 about the hazards of asbestos.

From the foregoing evidence, the jury was authorized to find that, prior to the time of Wommack's exposure, there was substantial information available to Crane which would have informed it of the hazards associated with asbestos exposure. See generally *Wells v. Ortho Pharmaceutical Corp.*, 788 F2d 741, 745-746 (11th Cir. 1986). See also *Bishop v. Farhat*, 227 Ga. App. 201 (489 SE2d 323) (1997).

Furthermore, although the asbestos contained in the packing may not have become airborne if the packing remained unaltered in any manner, viewed in a light to support the verdict, the evidence showed that Wommack's use of the packing was foreseeable. Wommack used the packing to seal pipe joints, which was the intended purpose, and his exposure to the asbestos dust resulted from merely cutting the packing to the appropriate size to fit a joint and in removing old packing from previously sealed joints. The jury was authorized to find that such cutting and removal were foreseeable in utilizing the packing for its intended purpose. Because there was evidence supporting the jury's verdict, the trial court did not err in denying

Crane's motions for directed verdict and new trial on this ground. See id.; *Hotle*, supra. Compare *Gideon v. Johns-Manville Sales Corp.*, 761 F2d 1129, 1144-1145 (5th Cir. 1985) (no evidence that encapsulated asbestos was released during plaintiff's use of defendant's product and evidence of asbestos released from *other* products insufficient to impute knowledge).

(b) In addition, because the evidence showed that Crane should have known about the hazards resulting from Wommack's use of the packing, the trial court correctly ruled that Crane had a duty to warn Wommack of those hazards. See *Wells*, supra at 745.

(c) There was evidence that Crane's asbestos packing released respirable asbestos fibers. It was undisputed at trial that Crane's asbestos packing contained between 35 and 55 percent asbestos. It was further undisputed that when Wommack removed the old asbestos packing, it created visible dust and that when he cut the packing, he noticed fibers "like if you sawed a piece of lumber. . . ." One of Wommack's experts testified that although individual asbestos fibers are not visible to the naked eye, they become visible when much greater concentrations are clustered together. He stated that when dust is created from an asbestos-containing product "the actual number of fibers likely to be present in the air where you see the dust would be in the billion [particles per cubic foot] range." Accordingly, contrary to Crane's assertion, there was evidence showing its packing released respirable asbestos fibers, and the trial court did not err in denying Crane's motions for directed verdict and new trial on this ground. See *Hotle*, supra.

(d) There was also evidence showing that Crane's packing caused Wommack's injuries. Viewed in a light most favorable to support the verdict, we find that the foregoing evidence showed that during the approximately 15 years Wommack used Crane's asbestos packing, he became exposed to a substantial amount of respirable asbestos fibers. Expert testimony showed that it is universally agreed that asbestos fibers are intrinsically dangerous and that the respiration of each fiber is cumulatively harmful, and physicians and other experts attributed Wommack's asbestos-related diseases to his work. This constituted sufficient evidence for a jury to find that Wommack's injuries were caused by his exposure to asbestos contained in Crane's packing. See *Blackston v. Shook & Fletcher Insulation Co.*, 764 F2d 1480, 1482-1483 (11th Cir. 1985).

3. Crane asserts that the trial court erred in allowing Wommack to give his opinion concerning whether he installed or removed any of Crane's packing because his testimony was based on speculation. We disagree.

In response to the question, "did you remove any John Crane packing[,]" Wommack stated "I feel sure that I did." Wommack

explained that he was sure because he had previously packed the same valves. Other testimony showed that when Wommack packed the valves, he knew he was using Crane's packing because Crane's name was on the packaging.

"A witness may testify to facts about which he has personal knowledge." *Aman v. State*, 223 Ga. App. 309, 310 (1) (477 SE2d 431) (1996). Wommack's response in this instance was based on facts within his personal knowledge and merely showed that he was sure he removed Crane's packing and why he was sure of this fact. It would be elevating form over substance to call his response an opinion. See generally *Jobson v. Dooley*, 164 Ga. App. 440, 442 (296 SE2d 388) (1982). Accordingly, we find no error.

4. The trial court did not err in denying Crane's request to present the jury with special interrogatories. The decision of whether to present a special verdict form under OCGA § 9-11-49 (a) is within the discretion of the trial court, and the trial court's decision will not be reversed absent an abuse of that discretion. *Pressley v. Jennings*, 227 Ga. 366, 376 (20) (180 SE2d 896) (1971). Inasmuch as Crane has failed to cite any facts showing the court abused its discretion, we find no error.

5. Finally, Crane asserts that the trial court erred in allowing the deposition of Dr. Yasunosoke Suzuki to be read into evidence because the trial court did not find, pursuant to OCGA § 9-11-32 (a) (3), that the witness was unavailable to testify.

The transcript shows that immediately prior to adjourning for the day, Wommack's counsel informed the court that it would be introducing the deposition testimony the following day. The transcript next indicates that there was a discussion off the record. Upon resuming the proceedings the following day, the trial judge stated that the previous afternoon he had asked counsel for both parties to "get together and resolve any matters that could not be resolved [concerning the deposition], and [he would] address those that could not be resolved." The transcript shows that the only unresolved issue, and the only objection then raised by Crane, concerned certain photographs being admitted with the deposition.

Under these circumstances, we are unable to determine (1) whether the trial court resolved the matter off the record in the unrecorded discussion, (2) whether Crane objected at trial on the ground asserted here, and (3) whether admission of the deposition caused any harm. Accordingly, because Crane failed to show by the record that the trial court erred and that it preserved any such error for appeal, we must presume that the trial court did not err. See *Stolle v. State Farm &c. Ins. Co.*, 206 Ga. App. 235, 236 (2) (424 SE2d 807) (1992); *Hoover v. State*, 198 Ga. App. 481, 482 (3) (402 SE2d 92) (1991).

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED JUNE 27, 1997 —
RECONSIDERATION DENIED JULY 24, 1997 —

*Hawkins & Parnell, Dennis J. Manganiello*, for appellant.
*Lane & Gossett, C. Darrell Gossett*, for appellee.