A00A2409. HOFFMAN et al. v. AC&S, INC. et al.
(548 SE2d 379)

RUFFIN, Judge.

Elaine Hoffman filed suit against 16 manufacturers and/or suppliers of asbestos-containing products, alleging that she contracted malignant pleural mesothelioma[1] as a result of exposure to defendants' products.[2] She asserted claims of both negligence and strict liability. After dismissing Hoffman's claims against eleven of the defendants, the trial court granted summary judgment in favor of the remaining five defendants: Pittsburgh-Corning Corporation; AC&S, Inc.; Rapid-American Corporation; Asbestos Claims Management Company f/k/a National Gypsum Company; and Armstrong World Industries, Inc. ("AWI"). Hoffman appeals the grant of summary judgment. We dismiss the appeal as to two defendants that have sought bankruptcy protection, and we affirm the grant of summary judgment to the remaining three defendants because Hoffman failed to present evidence identifying their products as the ones to which she was exposed.

1. Since the decision of the trial court, it appears that defendants Pittsburgh-Corning Corporation and Asbestos Claims Management Company have sought relief under Chapter 11 of the Bankruptcy Code. Further proceedings against Pittsburgh-Corning Corporation and Asbestos Claims Management Company are therefore stayed by operation of 11 USC § 362, and this appeal is dismissed without prejudice as to those parties. Hoffman may file a new notice of appeal as to those parties within 30 days of the lifting of the bankruptcy stays.[3]

2. We now address Hoffman's appeal as it relates to the three remaining defendants in the case — AC&S, Rapid-American, and AWI.

---

[1] Malignant pleural mesothelioma is a cancer of the lining of the lungs.
[2] Hoffman's husband also filed a claim for loss of consortium.
[3] See *Wade v. First Union Nat. Bank*, 231 Ga. App. 879 (498 SE2d 372) (1998); *DCA Architects v. American Bldg. Consultants*, 203 Ga. App. 598, 599-600 (1) (417 SE2d 386) (1992).

Hoffman's theory of liability is that during the mid-1960s, her brothers, Alan and Steven Goldberg, "worked around [defendants'] asbestos products, carried home the asbestos dust and fibers on their work clothes, and exposed [her] to the asbestos dust and fibers," causing her to contract mesothelioma some 30 years later. Alan Goldberg testified that he worked at the Savannah Machine & Foundry shipyard from June to August 1965. During that time, he lived at home with his parents, his younger brother, and Hoffman. Alan stated that the shipyard was filled with dust "created by the grinding, sanding, welding and cutting processes" performed there and that this dust covered his clothes and body. He further stated that, when he came home from work, he would often greet Hoffman with a hug and a kiss while still wearing his work clothes. Alan removed his dirty clothes and sometimes shook off the dust in the bathroom, which was also used by Hoffman. His mother washed the dirty work clothes together with the rest of the family's laundry.

Alan testified that during his first month at the shipyard, he worked as a welder's apprentice and did not work with any asbestos products. During his second and third month at the shipyard, he served as a carpenters' apprentice. Although Alan stated that he worked with asbestos products during that period, he could not recall the name of any particular product and could not identify with certainty any particular manufacturer.[4] Steven Goldberg testified that he worked at the shipyard as a boilermaker's assistant for one summer in either 1965 or 1966 and that his primary duty was to carry water to workers in the ship's hold. He stated that he did not know whether he worked with or around any products containing asbestos.

Van Allen Lovell testified that he worked at the shipyard as a welder and boilermaker from 1951 to approximately 1983. Lovell remembered working around the boilers with the Goldberg brothers, but he could not recall when or how long the Goldbergs were there. According to Lovell, most of the products used around the boilers contained asbestos because "[t]hat's the only thing that could stop that fire from eating that steel up." He stated that a "slew" of asbestos products "from different companies" were in use at the shipyard. Lovell testified, however, that he "can't say what kind of products we [were] using," and he later noted that he "[paid] no attention to that." Likewise, Lovell was unable to state whether the Goldberg brothers ever worked with any particular asbestos product or brand.

Roy Graddick testified that he worked as a boilermaker at the shipyard from 1956 to 1983 and that he supervised Lovell. Graddick

---

[4] Alan did testify that he "believed" one of the products he used was manufactured by Johns Manville, which is not a defendant in this case. In his affidavit, however, Alan said he was "unable to identify any asbestos containing product by brand name."

did not recall the Goldbergs, but he did remember Lovell. Graddick stated that he began ordering asbestos products for the shipyard in 1961 or 1962. Although Graddick identified a number of different asbestos products that were used at the shipyard, including many that were manufactured by the defendants in this case, he could not state that any particular employee worked with any particular product. Moreover, although Graddick presumed that Lovell must have been in the vicinity of various specific asbestos products at some point during his career, Graddick could not state that Lovell worked with any particular product at any particular time.

The defendants sought summary judgment on the ground that Hoffman failed to present sufficient evidence that the asbestos products to which her brothers allegedly were exposed were defendants' products. Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[5] To win summary judgment, "a defendant need not produce any evidence but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim."[6] Although the plaintiff is entitled to the benefit of all reasonable inferences to be drawn from the evidence, such inferences "cannot be based on mere conjecture or possibility or upon evidence which is too uncertain or speculative."[7] We review a grant of summary judgment de novo.[8]

To survive summary judgment, Hoffman clearly needed to present evidence that she was exposed to defendants' products. Under Georgia law, "[w]hether proceeding under a strict liability or a negligence theory, 'proximate cause' is a necessary element of [a product liability] case."[9] We have held that

> [u]nless the manufacturer's defective product can be shown to be the proximate cause of the injuries there can be no recovery. A manufacturer has the absolute right to have his strict liability for injuries adjudged on the basis of the design of his own marketed product and not that of someone else.[10]

Thus, Hoffman needed to establish that the product or products that allegedly caused her mesothelioma were, in fact, manufactured or

---

[5] OCGA § 9-11-56 (c).

[6] *Clark v. Joiner*, 242 Ga. App. 421 (530 SE2d 45) (2000).

[7] *Wender & Roberts, Inc. v. Wender*, 238 Ga. App. 355, 356 (518 SE2d 154) (1999).

[8] *Clark*, supra.

[9] *Talley v. City Tank Corp.*, 158 Ga. App. 130, 134 (3) (279 SE2d 264) (1981).

[10] (Emphasis omitted.) Id. at 135.

supplied by the defendants in this case.[11]

Federal courts applying Georgia law in asbestos cases have held that "the threshold for every theory is proof that an injured plaintiff was exposed to asbestos-containing products for which the defendant is responsible."[12] That is, the plaintiff must present evidence "that a particular defendant's asbestos-containing product was used at the job site and that the plaintiff was in proximity to that product at the time it was being used."[13] Such evidence may include "[t]estimony of co-workers who can identify a plaintiff by name as having worked with or around a particular defendant's asbestos-containing products."[14] A plaintiff may either (1) identify by name an employee with whom he worked and submit an affidavit from that employee stating that he used the defendant's asbestos-containing products, or (2) submit an affidavit from a co-worker identifying the plaintiff by name as working in the same vicinity with him and stating that he (the co-worker) used the defendant's asbestos-containing products.[15]

Hoffman attempts the second method of proof. Lovell, a former employee at the shipyard, remembered working with the Goldberg brothers, but could not identify any particular asbestos products to which they might have been exposed. Graddick, another former employee, did not remember the Goldbergs, but he did identify a number of specific asbestos products — and their manufacturers — that were used at the shipyard over the years.

The problem, however, is that Graddick was unable to testify that any particular product manufactured by the defendants was used at the shipyard while the Goldbergs were there. It is undisputed that the Goldbergs worked at the shipyard only for a brief period of time — the summer of 1965 or 1966. At a minimum, Hoffman needed to present evidence that the defendants' products were present in the shipyard during that brief period. But Graddick could not provide such evidence.

For the purpose of this appeal, defendants AC&S and AWI are associated with asbestos-containing insulation products bearing the name "Armstrong."[16] Graddick testified that he remembered Arm-

---

[11] See *Davis v. Wells Aluminum Southeast*, 172 Ga. App. 357 (323 SE2d 215) (1984) (affirming grant of summary judgment where plaintiff failed to present evidence that allegedly defective aluminum strip was manufactured by defendant).

[12] *Blackston v. Shook & Fletcher Insulation Co.*, 764 F2d 1480, 1481 (11th Cir. 1985). See also *Hoffman v. Allied Corp.*, 912 F2d 1379, 1383 (11th Cir. 1990); *Odum v. Celotex Corp.*, 764 F2d 1486, 1488 (11th Cir. 1985); *Lee v. Celotex Corp.*, 764 F2d 1489, 1490 (11th Cir. 1985); *Lowie v. Raymark Indus.*, 676 FSupp. 1214, 1216 (S.D. Ga. 1987).

[13] *Odum*, supra.

[14] Id.

[15] See *Blackston*, supra at 1482.

[16] According to an affidavit submitted by an employee of AWI, AWI manufactured and distributed asbestos-containing block insulation and insulating cement under the name

strong brand insulation being used at the shipyard, but he could not remember what kind of insulation it was or when it was used. He further testified that he believed he saw Armstrong insulating cement at the shipyard "in the sixties," but he refused to commit to any specific year. To infer from this testimony that Armstrong asbestos products were used at the shipyard during the three-month span of the summer of 1965 or 1966 would be sheer speculation. "Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment."[17] Thus, Graddick's testimony fails to create an issue of fact as to the Goldbergs' alleged exposure to products associated with defendants AC&S and AWI.

The same is true for defendant Rapid-American. For the purpose of this appeal, Rapid-American accepts responsibility for products manufactured by Philip-Carey. Graddick remembered only one such product — Philip-Carey "All-Temp" insulating material. When asked whether this product contained asbestos, Graddick replied, "I don't know." Graddick further stated that he did not know where within the shipyard the product was used or when it was used. In fact, Graddick could not even say that All-Temp was used during the 1960s. Thus, there is no evidence tying the Goldbergs to any products associated with Rapid-American.

3. Hoffman contends that the unrebutted affidavit of her expert witness, Dr. Martin Cherniack, constitutes evidence that her brothers were exposed to defendants' asbestos-containing products. We disagree.

According to his affidavit, Dr. Cherniack was retained "to render an opinion on whether or not Elaine Hoffman's malignant pleural mesothelioma was causally related to exposure to asbestos fibers" — not to ascertain *whose* asbestos fibers were the source of exposure. After studying the depositions of Hoffman, the Goldbergs, Graddick, and Lovell, as well as Hoffman's medical records, Dr. Cherniack concluded that Hoffman's brothers were exposed to products containing asbestos during their employment at the shipyard, that fibers from those products clung to their clothing, and that Hoffman came into contact with the fibers as a result of living in the same household as her brothers. Dr. Cherniack noted that "boilermaker and welder/car-

---

"Armstrong" up until 1958, and it manufactured and distributed Armstrong-brand asbestos-containing pipe insulation through 1959. Thereafter, AWI licensed the use of its trademark to AC&S, which used the name "Armstrong" on pipe covering, block insulation, and cements that it sold in the 1960s. For the purpose of this appeal, AC&S accepts responsibility for asbestos-containing insulation bearing the "Armstrong" name which may have been present at the shipyard in the 1960s. AWI denies such responsibility.

[17] (Punctuation omitted.) *John Hewell Trucking Co. v. Brock*, 239 Ga. App. 862, 864 (522 SE2d 270) (1999).

penter helpers in the 1960s were routinely exposed to a significant number of asbestos containing products" and that Graddick and Lovell "identified numerous asbestos containing products, including but not limited to" some of the products manufactured by defendants. But Dr. Cherniack did *not* state that Hoffman's brothers were exposed to defendants' products, nor would he have had any basis for so stating.

As explained above, there simply is no evidence linking Hoffman's brothers to defendants' products. Hoffman's attempt to establish such a link based on conjecture and speculation fails. Accordingly, the trial court properly granted summary judgment to defendants.

*Summary judgment in favor of appellees AC&S, Inc., Rapid-American Corporation, and Armstrong World Industries, Inc. affirmed. Appeal of judgment relating to appellees Pittsburgh-Corning Corporation and Asbestos Claims Management Company dismissed with instructions. Judgment affirmed in part and appeal dismissed in part. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 14, 2001.

*Middleton, Mathis, Adams & Tate, Charles A. Mathis, Jr., Douglas P. McManamy, Leslie S. Pickett*, for appellants.

*Blasingame, Burch, Garrard, Bryant & Ashley, Ivan A. Gustafson, Christopher G. Conley, Hawkins & Parnell, Michael J. Crist, Drew, Eckl & Farnham, Jeffrey A. Burmeister, Stevan A. Miller*, for appellees.

