## A09A2302. ADAMSON v. GENERAL ELECTRIC COMPANY et al.

### (694 SE2d 363)

ADAMS, Judge.

John H. Adamson contracted and died from mesothelioma, a form of cancer caused by exposure to asbestos. Prior to his death, he brought suit against numerous parties allegedly responsible for his contact with asbestos. After his death, his son John D. Adamson took over the litigation as the executor of the estate. At issue in this appeal is whether the trial court properly granted summary judgment to six of the defendants.

The broad outline of the facts is not in dispute although the details are. The broad outline is that Adamson,[1] who was born on October 25, 1925, worked as an electrician and an electrical crew supervisor for his entire 35-plus-year career. From the early-1950s to 1967, he spent between 70 and 80 percent of his time at The National Test Reactor Station in Arco, Idaho known as "The Site" and the rest of the time at "a few jobs that I had back in around Pocatello and Idaho in a place called Soda Springs [a Monsanto Phosphate Plant]. I [also] worked on a phosphate plant [run by FMC Corporation]"; Adamson mentioned other jobs as well. At FMC, Adamson was employed by an electrical contractor — Bechtel Corporation — that had been hired by FMC. FMC admits that it supplemented its in-house electricians with electrical contractors from time to time.

From 1967 through his retirement, Adamson worked as a supervisor for an electrical contractor named EBASCO Services, which designed and built electrical power houses. During this time, he often worked in electric generating facilities. He stated several times that as a supervisor he did not do any hands-on work and that he had, at times, hundreds of electricians working for him. During this time, Adamson worked at many sites, and in his entire career, he worked at 18 or more job sites.

In his complaint, Adamson alleged that throughout his career he came into contact with "asbestos related materials and other asbestos containing products mined, manufactured, processed, imported, converted, compounded, sold or distributed by" each of 119 named defendants as well as an unknown number of unidentified defendants. The trial court had denied summary judgment for some of the defendants and granted summary judgment for others; some parties have settled.

Relative to this appeal, the trial court granted summary judgment to FMC and five defendants who have manufactured asbestos-containing products in the past — A. W. Chesterton Company,

---

[1] In this opinion, we will refer to the decedent as "Adamson" and his son as the appellant.

Garlock Sealing Technologies, LLC, CBS Corporation (a successor to Westinghouse Electric Corporation), General Electric Company, and Union Carbide Corporation. FMC successfully invoked the exclusive remedy bar of workers' compensation. The five manufacturer defendants all claimed lack of proof of exposure to their products, and the trial court ruled in their favor on that issue.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

1. As an initial matter, the appellant relies on some documents that are not admissible evidence and therefore cannot be used to support his contentions. He several times cites to a report dated June 10, 2005 prepared by Jerry F. Lauderdale (the "Lauderdale Report"), and to another dated March 20, 2005 prepared by Thomas A. Selders, both of which were attached as an exhibit to the plaintiff's "Master Memorandum" in opposition to all the summary judgment motions. But both reports are hearsay themselves, and they contain more hearsay. They are unsworn, unauthenticated documents that include assertions of fact about Adamson's personal exposure to asbestos about which the authors have no personal knowledge.[2] Such reports must fit within a hearsay exception before they can be considered as substantive evidence in support of a claim. *Henson v. Ga.-Pacific Corp.*, 289 Ga. App. 777, 780, n. 2 (1) (658 SE2d 391) (2008). The appellant has shown no such exception for these reports and they therefore have no weight or force whatsoever. *White Missionary Baptist Church v. Trustees of First Baptist Church &c.*, 268 Ga. 668, 669 (1) (492 SE2d 661) (1997).

Second, several of the appellant's citations to the record do not reveal the information allegedly found at that location in the voluminous record. "[I]t is not the function of this court to cull the record on behalf of a party in search of instances of error. The burden is upon the party alleging error to show it affirmatively in the record." (Punctuation and footnotes omitted.) *Fortson v. Hotard*, 299 Ga. App. 800, 801 (1) (684 SE2d 18) (2009). Moreover, appellant's citations to the record are not in proper form. Citations should be made to the volume and page number of the appellate record, not to the first page of a certain document and then to the internal page number of that document. See Court of Appeals Rule 25 (c) (2) (iii).

---

[2] Moreover, the Lauderdale Report purports to be based on a single inspection of the FMC plant on May 30, 2005, almost 40 years after Adamson could possibly have worked at the site.

It is a disservice to the client to not follow the rules of this Court which are designed to facilitate review.

2. FMC, the owner of an Idaho phosphate plant where Adamson at one time worked as a contractor, moved for summary judgment on the ground that the appellant's tort claims were barred by the exclusive remedy provision of the Georgia Workers' Compensation Act because it was Adamson's statutory employer. The appellant responded that Georgia law was inapplicable — that under the rule of lex loci delicti, the law of Idaho and the Idaho Workers' Compensation Act controlled the issue. Although in an awkward fashion, the trial court ultimately applied Idaho law to the question of whether FMC was immune from suit.[3] The appellant now contends that the trial court should not have applied Idaho law and that, even so, it applied the incorrect version of Idaho law.

With regard to Idaho law, the appellant cannot now be heard to complain given that he argued for its application in the trial court. "Induced error is impermissible. *Edwards v. State*, 235 Ga. 603, 604 (221 SE2d 28) [(1975)]. A party cannot claim error . . . where he himself committed or invited the error. . . . [Cit.]" (Punctuation omitted.) *Westmoreland v. State*, 192 Ga. App. 173, 176 (2) (b) (384 SE2d 249) (1989).

With regard to the correct Idaho law, we find no reversible error. The trial court relied on *Robison v. Bateman-Hall, Inc.*, 76 P3d 951 (Idaho 2003), for the rule that a premises owner will be deemed to be a statutory employer responsible for workers' compensation benefits if in the course of its usual trade or business it employs persons and is equipped to perform the function performed by the independent contractor.[4] The appellant contends that the correct rule is found in *Adam v. Titan Equip. Supply Corp.*, 470 P2d 409 (1) (Idaho 1970), because the relevant statute (Idaho Code § 72-223) was amended in 1996. But as explained by the Supreme Court of Idaho, under Idaho

---

[3] The trial court first recognized the applicable Georgia law, which is that a property owner who hires an independent contractor *"is not* a statutory employer who is liable for workers' compensation benefits or immune to tort liability by reason of the exclusive remedy provision of the Act, OCGA § 34-9-11." (Emphasis supplied.) *Manning v. Ga. Power Co.*, 252 Ga. 404, 405 (314 SE2d 432) (1984). See also *Creeden v. Fuentes*, 296 Ga. App. 96, 98-99 (1) (673 SE2d 611) (2009). But the trial court went on to explain, "[h]owever, where the premise owner is potentially liable for workers' compensation benefits it is entitled to tort immunity," citing *Wright Assocs. v. Rieder*, 247 Ga. 496 (277 SE2d 41) (1981). It then determined that FMC, which is located in Idaho, would be deemed a statutory employer under Idaho law under the facts of the case and that, therefore, it was "entitled to immunity under OCGA § 34-9-11."

[4] The court then referred to undisputed evidence that when Adamson worked as an independent contractor at FMC, FMC maintained electrical arc furnaces, it regularly employed full-time electricians, and contractors were hired to allow FMC electricians to perform other necessary electrical work at the plant. (The appellant does not challenge these factual findings.) Accordingly the trial court held that since FMC was potentially liable for workers' compensation benefits in Idaho, it was entitled to tort immunity under the Georgia Act.

law the date that an occupational disease first manifests itself governs which version of the Workers' Compensation Act is to be applied:

> This Court has previously held the law to be applied to a [workers' compensation] case is the law in effect at the time that the cause of action arose. [Cits.] In the case of an occupational disease, the cause of action arises at the time of the first manifestation of the disability. [Cit.]

*Alexander v. Harcon, Inc.*, 992 P2d 780, 783 (Idaho 2000). Here, the appellant admits that Adamson's mesothelioma first manifested itself on or after March 12, 2002. Thus, only the post-1996 version of Idaho Code § 72-223 can be applicable here. Accordingly, we find no legal error in the trial court's decision to rely on *Robison v. Bateman-Hall, Inc.* and no cause for reversal.

3. *The Manufacturer Defendants.*

To survive summary judgment, the appellant "needed to present evidence that [the manufacturer defendants'] asbestos-containing product was used at [the location of Adamson's employment] and that [he] was in proximity to that product at the time it was being used." (Citations and punctuation omitted.) *Williams v. Flintkote Co.*, 256 Ga. App. 205, 206 (568 SE2d 106) (2002), quoting *Hoffman v. AC&S, Inc.*, 248 Ga. App. 608, 611 (2) (548 SE2d 379) (2001). A plaintiff may testify to this information from personal knowledge; he may also meet this burden other ways, including "by offering the testimony of a co-worker who can identify the plaintiff by name as having worked with or around a particular defendant's asbestos-containing products." (Punctuation omitted.) *Williams*, 256 Ga. App. at 206.

Here, the five manufacturer defendants asserted an absence of evidence of proximity as required by the above law. "A defendant who will not bear the burden of proof at trial need only show an absence of evidence to support an essential element of the nonmoving party's case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)." *Latson v. Boaz*, 278 Ga. 113 (598 SE2d 485) (2004). "If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." *Lau's Corp.*, 261 Ga. at 491. Finally, "[a]lthough the plaintiff is entitled to the benefit of all reasonable inferences to be drawn from the evidence, such inferences cannot be based on mere conjecture or possibility or upon evidence which is too uncertain or speculative." (Punctuation omitted.) *Hoffman*, 248 Ga. App. at 611 (2). Here, the appellant has not cited to any deposition testimony from the defendants. Rather, he relies on his father's

depositions, the depositions of several alleged co-workers, and the defendants' discovery responses.

(a) With regard to Chesterton, the appellant contends that several pieces of evidence establish his father's proximity to Chesterton asbestos-containing products. We disagree. The evidence does show that some Chesterton products, including gaskets and packing material, have been used at FMC. Adamson worked at the FMC facility for five or six months in 1951 and 1952, and for other unspecified times during the 1960s totaling about three months.[5] But the appellant has not cited any evidence to show that his father was ever in proximity to any *asbestos-containing* gaskets or packing material manufactured by Chesterton. Adamson testified that the only names he recalled in relation to gaskets and packing material were "Garland" or "Garlock."

Instead the appellant cites testimony of Aldon W. Crockett and Bill Moore. Crockett averred that Chesterton products accounted for perhaps 25 percent of the packing materials used at the FMC plant. But Crockett's testimony is insufficient: he never identified Adamson by name as being a co-worker and did not otherwise correlate his testimony to Adamson's work at FMC; he did not testify that Adamson was in proximity with Chesterton products; and he did not identify the time period that Chesterton products were present at the FMC facility, which was necessary because he worked at FMC 19 years past when Adamson worked there.

Similarly, Moore's testimony is inadequate. He testified that he worked with Adamson for the first time at FMC in 1953, that the two had the same type of job, and that they worked side by side at times. But he did not link Adamson to any Chesterton asbestos-containing products and did not place Adamson in proximity to any such products. Finally, Chesterton established that it manufactured both asbestos-containing and nonasbestos-containing packing products during the 1950s and 1960s, yet the appellant has cited no evidence to show that any of Chesterton's asbestos-containing products were at use in the FMC plant when Adamson was working there, let alone that Adamson was in close proximity to them. Thus the appellant

---

[5] The appellant's reply brief attempts to show that Adamson's service at FMC was more significant. He states therein that Bill Moore "testified that he worked with Decedent at FMC on and off from 1953 until 1957." He cites the wrong page of Moore's deposition for this point. And, more importantly, the deposition does not support the statement. Moore testified that he, himself, worked at FMC for a total of about two years, on and off during the period of 1953 to 1957. But Moore denied that Adamson was there all of the time that he was. The rest of his testimony was speculative: Moore "believed" that Adamson was at FMC when he arrived, could not remember if Adamson was there when he left, and he did not know how long Adamson had worked at FMC overall but "as my memory serves me, he was there longer than I was."

has not shown that his father either used or was in proximity to a Chesterton manufactured asbestos-containing product at a time that it was being used at FMC. Summary judgment for Chesterton was proper.

(b) The appellant contends the following evidence establishes his father worked in proximity with Garlock's asbestos-containing products. Crockett testified that Garlock's products accounted for about 75 percent of the packing material used at the FMC plant, but he did not specify a time period. Adamson remembered having to cut gaskets out of sheets of gasket material, although he did not recall the manufacturer. Moore testified that Garlock made sheets of gasket material and rope gaskets; he even recalled that the name "Garlock" was printed on both items. He added that the only gasket material he saw at FMC was what he considered to be asbestos-containing material. Moore testified that he worked with both Garlock products at FMC in areas where both he and Adamson worked, and that Adamson was "part of the crew and did what all the rest of us did." He was "quite sure" that Adamson had used the gasket material. But he admitted that he did not specifically recall seeing Adamson using sheet gasket material or rope gaskets. Finally, he testified that it was the general knowledge of the electricians and other workers that there was asbestos in both the gasket material and the rope gaskets and that it would not have withstood the heat and pressure otherwise; he admitted, however, that he did not know the specific composition of the products.

Garlock asserts that it manufactured gaskets with and without asbestos and that the evidence does not show that Adamson worked in proximity with any of its asbestos-containing products. Garlock also argues that Moore failed to correlate his testimony to the time of Adamson's employment and that it is otherwise inadequate to create an issue of fact as to whether Adamson worked in proximity with any asbestos-containing products manufactured by Garlock.

We agree that the evidence is not sufficient to withstand summary judgment. Moore never connected any of Garlock's asbestos-containing products to a place in proximity to Adamson at a time that Adamson worked at FMC. See *Hoffman*, 248 Ga. App. at 611-612 (no evidence that defendants' product was present during brief period that injured party worked there; evidence that the products were there "over the years" was insufficient). Neither Moore nor Crockett specified that Adamson and the injurious products were present at the same time in the same place. See *Williams*, 256 Ga. App. at 207 (broad statement that witness used products at issue "all over" the plant is not sufficient to link a specific product to the plaintiff). "Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an

inference of fact for consideration on summary judgment." (Citation and punctuation omitted.) *Hoffman*, 248 Ga. App. at 612. Compare *John Crane, Inc. v. Wommack*, 227 Ga. App. 538 (489 SE2d 527) (1997) (plaintiff specifically remembered using defendant's asbestos-containing product).

(c) The appellant contends the following evidence establishes that his father worked in proximity with CBS's (a successor in interest to Westinghouse) asbestos-containing products. Adamson recalled working with cr around Westinghouse products, including switchgears, motors control panels, high-temperature motors, turbines, and a product called "Micarta." There was also evidence that Westinghouse circuit breakers were used at FMC. CBS admits that these Westinghouse products may have contained asbestos at the time.[6]

Westinghouse concedes that Adamson worked with or near Westinghouse products that may have contained asbestos. But Westinghouse made these products both with and without asbestos over the years, and it argues that the evidence must specifically show that the plaintiff worked in proximity with the defendant's asbestos-containing products, and that the product was being used in a way that might cause the asbestos fibers to become airborne.

We agree with Westinghouse that the plaintiff failed to present any evidence that Adamson was exposed to its asbestos-laden products as opposed to its products generally. "When a party is relying on inferences to prove a point, not only must those inferences tend in some proximate degree to establish the conclusion sought, but must also render less probable all inconsistent conclusions. [Cits.]" *Page v. Atlanta Center*, 219 Ga. App. 422, 424 (465 SE2d 456) (1995). Here, the appellant has not introduced any depositions of CBS/Westinghouse nor any other witness to parse out when and where its various products have been used, what types were used at the places where Adamson worked at the time that he worked there, and which ones contained asbestos. Nor did Adamson testify to any such link. The appellant relies solely on an inference that Westinghouse products constitute a proximate cause of his father's injury; and the evidence does not render less probable the possibility that Adamson worked solely with Westinghouse's nonasbestos products.[7] The trial court did

---

[6] The appellant also offers the deposition of Leo Hoffman, but Hoffman only worked at FMC beginning in 1966, and there is no evidence that Adamson was still there when Hoffman arrived.

[7] The appellant's citations to Moore's deposition relative to Westinghouse are not supported by the appellate record. First, the citations appear to be to a second deposition of Moore that has not been included in the record and therefore cannot be considered. Moreover, the appellant provides no citations placing Adamson in proximity with a Westinghouse product known to contain asbestos.

not err in granting summary judgment.

(d) The appellant contends the same evidence offered for Westinghouse establishes his father worked in proximity with General Electric's asbestos-containing products, in part because "Westinghouse and GE are synonymous to electrical." But again, although Adamson may have recalled working around GE products, he did not testify that he worked around any GE product that contained asbestos. He admitted that he did not know much about asbestos during the 1950s, 1960s, or 1970s. Rather, the appellant cites the discovery responses of GE and the depositions of Hoffman, John Walters, John Caston, and Gordon Scherbel. But, as shown above, Hoffman's testimony is not relevant. The appellant claims that Walters "associated asbestos with the GE products around which he and [Adamson] worked." But the cited pages in the record belie that statement. Deponent Caston did not know Adamson nor link him to GE asbestos-containing products. And Scherbel described a GE transformer that contained asbestos, but he did not know Adamson and he failed to link the transformer to him.

GE acknowledges that it made many of the types of equipment that Adamson worked with. But, like Westinghouse, it contends there is not evidence that Adamson worked in proximity with any asbestos-containing products that it manufactured. We agree and affirm the trial court.

(e) With regard to Union Carbide, the appellant only cites to evidence that his father recalled working with a product called "Bakelite," and he was exposed to dust from the product when it was cut or drilled. Union Carbide admits that it manufactured a product with that name. But Adamson admitted that he used the name as a generic representation of the type of board to which he was referring, that he did not know whether it contained asbestos, and that he did not know who manufactured it. After being asked about Bakelite, Adamson even admitted that he could not associate any specific products with the name Union Carbide. The appellant also cites Moore's testimony. But he cites to a deposition not provided in the record. Moore was uncertain as to whether he worked with the product at FMC. The only place he saw Adamson work with the product was at The Site. But Moore, too, used the term as a generic identifier. He testified that many companies made the product and he did not know the manufacturer of the product that he used. Neither this evidence, nor any other suggested by the appellant satisfies the requirement of presenting evidence that Adamson was ever in proximity to a Union Carbide asbestos-containing product at the time it was being used.

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED MARCH 22, 2010 —
RECONSIDERATION DENIED APRIL 14, 2010 — 

*Wendell K. Willard, Robert C. Buck, W. Benjamin Ballenger, David A. Webster,* for appellant.

*Chilivis, Cochran, Larkins & Bever, Nickolas P. Chilivis, John D. Dalbey, Amy E. Fouts, Hawkins & Parnell, Erin E. Shofner, Evert, Weathersby & Houff, Jennifer M. Techman, Christopher G. Conley, Donahue, Nelson & Cohen, Robert A. Barnaby II,* for appellees.