**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 29, 2019**

# In the Court of Appeals of Georgia

A19A1137. DAVIS et al. v. JOHN CRANE, INC.
A19A1138. DAVIS et al. v. FMC CORPORATION.

MARKLE, Judge.

In this consolidated appeal, we consider whether Leisa Davis,[1] presented sufficient evidence to create an issue of fact that her deceased husband, John F. Davis ("Davis"), was exposed to asbestos-containing products manufactured by John Crane, Inc. ("John Crane") and FMC Corporation ("FMC) during his employment at a fiberboard mill.

These appeals proceed from the trial court's grant of summary judgment in favor of John Crane and FMC in an asbestos-related personal injury and wrongful death action. In Case No. A19A1137, we conclude that the record raises factual

---

[1] To avoid confusion, we refer to Ms. Davis as "Appellant."

questions that preclude summary judgment, and we therefore reverse the order of the trial court. In Case No. A19A1138, finding no error, we affirm the trial court's order.

> Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. To win summary judgment, a defendant need not produce any evidence but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. Although the plaintiff is entitled to the benefit of all reasonable inferences to be drawn from the evidence, such inferences cannot be based on mere conjecture or possibility or upon evidence which is too uncertain or speculative. We review a grant of summary judgment de novo.

(Citations and punctuation omitted.) *Hoffman v. AC&S, Inc*., 248 Ga. App. 608, 610 (2) (548 SE2d 379) (2001).

So viewed, the record reflects that Davis worked at the Louisiana Pacific Corporation fiberboard mill ("Louisiana Pacific" or "the mill") in Alabama from 1984 to 1998. He was initially hired as a laborer, then became a boiler operator the following year, and remained in that position for three to four years before moving to another position. As a laborer, Davis swept up dust and debris around the mill and assisted in the removal of gaskets on the mill's boilers. As a boiler operator, he installed and removed gaskets and packing material on the boilers and related pumps and valves. He accomplished this task by scraping and grinding off old gaskets and packing material, and applying fresh material in its place. As a result, dust was

discharged that would pile up on Davis's arms and body. In carrying out this task, Davis testified that he used John Crane asbestos-containing gasket and packing material, and that he replaced asbestos-containing gasket and packing material on two boiler feedwater pumps manufactured by Peerless Pumps ("Peerless"), a business formerly owned by FMC.

Davis was eventually promoted to maintenance supervisor, a position he held until he terminated his employment with Louisiana Pacific. As a maintenance man, Davis worked on all forms of equipment throughout the plant, in addition to the boiler area. In 2015, Davis was diagnosed with malignant mesothelioma and died that same year.

Shortly before his death, Davis and Appellant filed their complaint, naming twenty-two corporate entities as defendants,[2] and bringing claims for negligence, negligent product liability, loss of consortium, and punitive damages. Following Davis's death, Appellant amended the complaint to remove Davis as a plaintiff and to add a claim for wrongful death. The parties agreed to bifurcate the issues before the trial court and, at the time of the appeals, the case had not proceeded beyond the issue of product identification, i.e., whether the products that allegedly caused

---

[2] None of the additional corporate entities are involved in this appeal.

Davis's injuries were manufactured or supplied by a particular defendant. See *Hoffman*, 248 Ga. App. at 610-611 (2); *Williams v. Flintkote Co.*, 256 Ga. App. 205, 206 (2) (a) (568 SE2d 106) (2002).

John Crane and FMC moved for summary judgment, arguing that Appellant failed to establish proximate causation because she did not show that Davis was exposed to their asbestos-containing products during his employment at the mill. The trial court granted summary judgment to both defendants. These appeals followed.

*Case No. A19A1137*

1. In her sole enumeration of error, Appellant contends that summary judgment was improper because she met her burden by showing her husband was exposed to asbestos-containing products manufactured by John Crane while working at the mill. We agree.

In Georgia, product identification is a necessary element of an asbestos tort claim. "[T]he threshold for every theory is proof that an injured plaintiff was exposed to asbestos-containing products for which the defendant is responsible." *Hoffman*, 248 Ga. App. at 611 (2) 548 S.E.2d 379, 382 (2001), citing *Blackston v. Shook & Fletcher Insulation Co.*, 764 F2d 1480, 1481 (11th Cir. 1985). This rule coincides with the general requirement that a plaintiff establish proximate causation as a

4

necessary element of a tort claim. See id. at 610 (2) ("unless the manufacturer's defective product can be shown to be the proximate cause of the injuries there can be no recovery.") (citation and punctuation omitted). Thus,

> [t]o survive summary judgment, the appellant needed to present evidence that [John Crane's] asbestos-containing product was used at [Louisiana Pacific] and that [Davis] was in proximity to that product at the time it was being used. A plaintiff may testify to this information from personal knowledge; he may also meet this burden other ways, including by offering the testimony of a co-worker who can identify the plaintiff by name as having worked with or around a particular defendant's asbestos-containing products.

(Citations and punctuation omitted.) *Adamson v. Gen. Elec. Co.*, 303 Ga. App. 741, 744 (3) (694 SE2d 363) (2010); *Hoffman*, 248 Ga. App. at 610-611 (2).

In support of her argument, Appellant points to Davis's deposition testimony as well as that of two co-workers. Importantly, Davis, himself, affirmed that he had used John Crane asbestos packing material during his employment at the mill:

> Q: And during the time period that you worked at Louisiana-Pacific, did you yourself have occasion to work with different types of John Crane asbestos packing material, round, square, rope?
> A: Yes, I did.

Davis also testified that he encountered John Crane asbestos-containing sheet packing and gasket material while working at the mill; he was required to cut the materials to the appropriate size for each use; and he regularly installed and removed

5

John Crane asbestos-containing gaskets and packing material during routine maintenance of the equipment. Standing alone, this evidence – derived from personal knowledge – satisfies the threshold burden to show exposure to John Crane's asbestos-containing products under *Adamson*, 303 Ga. App. at 744 (3).[3]

Nevertheless, John Crane argues that it was entitled to summary judgment because the case against it is based on pure speculation, and it points to certain statements Davis made during his deposition in an attempt to show that Davis did not know whether the John Crane products he used at Louisiana Pacific contained asbestos.[4] We are not persuaded.

---

[3] We therefore do not reach John Crane's argument with regard to allegedly speculative testimony from Davis's coworkers. We also note that, at oral argument before this Court, John Crane's counsel conceded that a plaintiff's testimony from personal knowledge was sufficient to satisfy the burden at the product identification stage.

[4] For the first time at oral argument before this Court, John Crane argued that Davis's testimony violated the rule regarding self-contradictory testimony of a party-witness under *Prophecy Corporation v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986). Because John Crane did not obtain a ruling on this issue from the trial court, we decline to consider it. See *Steed v. Fed. Nat. Mtg. Corp.*, 301 Ga. App. 801, 806 (1) (a), n. 4 (689 SE2d 843) (2009); *Prophecy Corp.*, 256 Ga. at 30 (2) (on summary judgment, the trial judge decides whether the testimony of a party-witness is contradictory).

The first instance John Crane refers to is Davis's statement that he did not know if there was asbestos in any of the gaskets he replaced on a specific "Goulds" pump at the mill. However, the evidence of record establishes that there was more than one type of pump at the mill, and that Davis changed asbestos-containing gaskets on those other pumps. When read in context, this testimony does not support John Crane's contention that Davis's claims are speculative.

John Crane next cites Davis's testimony that, when removing a gasket, he could not identify the manufacturer or whether it contained asbestos. This testimony also does not conflict with Davis's testimony that he *installed* and handled John Crane asbestos-containing products generally.

John Crane further asserts that Appellant cannot show Davis was exposed to its asbestos-containing products because it had stopped selling such products by the relevant time period. However, the evidence of record was that the mill stockpiled its supplies; there were years' worth of replacement parts on hand in the storeroom; and employees used these stockpiled parts even after John Crane stopped selling asbestos-containing products. Similarly, although John Crane maintains that there is no evidence it sold asbestos-containing products to Louisiana Pacific directly, the record

7

establishes that the bulk of the mill's supplies were purchased through local distributors. At most, this evidence creates a question for the jury.

Finally, John Crane contends that Davis's testimony that there were no asbestos warnings on the John Crane gaskets he used is insupportable because John Crane placed warnings on all its asbestos-containing products as of November 1983. But John Crane misstates Davis's testimony regarding asbestos warnings, generally:

> Q: Did you ever observe any asbestos health hazard warning on any of the asbestos products that you encountered at Louisiana-Pacific? And by that I mean a warning that not only said that the product contained asbestos but described the danger to you if you breathed it.
> A: I don't recall seeing it. *They just had warning contains asbestos*.

Importantly, Davis recalled observing warnings on John Crane packaging, specifically, including labels that advised the user to wear a mask and safety glasses.

Accordingly, there was evidence of record that tended to show that Davis was exposed to John Crane asbestos-containing products during his employment at Louisiana Pacific. See *Adamson*, 303 Ga. App. at 744 (3) (an asbestos victim's testimony from personal knowledge is sufficient to establish threshold product identification); *John Crane, Inc. v. Wommack*, 227 Ga. App. 538, 541-542 (3) (489

8

SE2d 527) (1997).[5] At this stage, Davis's testimony was sufficient to withstand summary judgment. The trial court thus erred in granting summary judgment to John Crane on the issue of product identification, and we therefore reverse the order of the trial court.

*Case No. A19A1138*

2. In this case, Appellant seeks to hold FMC liable for injuries caused by third-party asbestos-containing replacement parts used in industrial pumps manufactured by its subsidiary,[6] and which Davis regularly maintained at the mill. Specifically, in related enumerations of error, Appellant contends that the trial court erred in granting summary judgment to FMC on her negligent design and failure to warn claims because it was foreseeable that the pumps would require asbestos-containing replacement parts as a result of regular wear and tear, and such foreseeability was

---

[5] To the extent John Crane contends *Wommack* is inapposite to the case at hand, we acknowledge that the issue there was whether a party- witness's testimony was an opinion based on speculation rather than personal knowledge, and not product identification per se. However, *Wommack* stands for the proposition that an asbestos victim may testify to his exposure to a particular manufacturer's products from his own personal knowledge, which is what occurred here. 227 Ga. App. at 541-542 (3).

[6] For the purposes of this appeal, FMC does not contest its liability, if any, as a successor-in-interest to Peerless.

9

sufficient to impose liability on FMC.[7] We decline to advance such a theory of liability in Georgia.

(a) Negligent Design Defect

It is well-established in Georgia that,

> if in the normal functioning of the product as designed, such function creates a danger or peril that is not known to the user or bystander, then the manufacturer is liable for injuries proximately caused by such danger. . . . [T]he maker of an article for sale or use by others must use reasonable care and skill in designing it so that it is reasonably safe for the purposes for which it is intended, *and for other uses which are foreseeably probable*[.]

(Citations and punctuation omitted.) *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 335 (2) (319 SE2d 470) (1984). However, as addressed in Division 1 above, "the injured plaintiff in Georgia must prove that he or she was exposed to asbestos-containing products for which the defendant is responsible," regardless of the theory of recovery. *John Crane, Inc. v. Jones*, 278 Ga. 747, 751 (604 SE2d 822)

---

[7] Appellant also enumerates as error the trial court's alleged misapplication of the product misuse and post-sale alteration defenses in granting summary judgment to FMC. However, neither of these defenses are implicated where, as here, Appellant's claims arise from component and replacement parts, rather than misuse or post-sale modifications to equipment. Compare *Talley v. City Tank Corp.*, 158 Ga. App. 130 (279 SE2d 264) (1981). Moreover, because we hold that Appellant's claims are barred on proximate causation grounds related to the issue of product identification, we do not reach this enumeration of error.

(2004); see also *Talley v. City Tank Corp.*, 158 Ga. App. 130, 134 (3) (279 SE2d 264) (1981). Stated another way, "[a] manufacturer has the absolute right to have his . . . liability for injuries adjudged on the basis of the design of his own marketed product and not that of someone else." (Citation omitted) *Talley*, 158 Ga. App. at 135 (3).

Here, the record shows that the Peerless pumps were installed and operating at the mill well before Davis's employment. It is undisputed that the gaskets and packing material Davis handled were not supplied by Peerless, but by third-party manufacturers, and that the original gaskets and packing material at the time of the pumps' installation had been replaced prior to Davis's employment. . Furthermore, although the pumps were designed with the knowledge that the packing would erode over time and would require replacement, the pumps could operate with packing made from materials other than asbestos, or could be modified in the field to require no packing at all.

In Georgia, "only semantics distinguishes the cause of action for negligence and a cause of action pursuant to OCGA § 51-1-11 (claiming strict liability for defective design)." (Citation and punctuation omitted.) *Banks v. ICI Americas, Inc.*, 264 Ga. 732, 735, n. 3 (450 SE2d 671) (1994); *Orkin Exterminating Co. v. Dawn Food Products*, 186 Ga. App. 201, 202 (3) (366 SE2d 792) (1988). Although

11

Appellant's claim is for negligent product design, we may consider "the principles which have been established generally in product liability cases." *Orkin Exterminating Co.*, 186 Ga. App. at 202 (3). With respect to the elements of a design defect claim, OCGA § 51-1-11 (b) (1) provides:

> The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and *its condition when sold is the proximate cause of the injury sustained*.

(emphasis supplied). On this record, Appellant cannot show that Davis's injuries resulted from the condition of the pumps when sold because Davis did not encounter them at that time.

Instead, Appellant attempts to ground FMC's liability in the foreseeable risks of its potential replacement parts.[8] In doing so, Appellant argues vociferously that we are bound by the recent United States Supreme Court case of *Air and Liquid Systems*

_____

[8] Appellant relies heavily on *Stubblefield*. However, that case is factually distinguishable because it does not involve a manufacturer's potential liability for foreseeable harm caused by third-party component or replacement parts. 171 Ga. App. at 332 ("The question presented to the jury was whether Ford, through the negligent design and placement of *its* fuel system . . . , exposed the occupants of this automobile to unreasonable risk of injury . . .") (emphasis supplied).

*Corp. v. Devries*, ___ U. S. ____ (139 SCt 986, 203 LE2d 373) (2019), in which the Court held that, in the maritime tort context, a manufacturer has a duty to warn when its equipment requires asbestos-containing replacement parts. However, we note that the Justices, both in the majority opinion as well as in the dissent, took pains to emphasize that the holding applied only in the maritime tort context due to particular concerns for the welfare of sailors. See, e.g., id., 139 SCt at 995 (II) ("We do not purport to define the proper tort rule outside of the maritime context."). We, therefore, decline to follow that opinion here, where there are no such concerns.

Essentially, Appellant argues against what has been termed "the bare metal defense."

> This defense is a challenge to both the duty and the causation elements of a negligence action, and holds that manufacturers of bare metal products cannot be held liable for injuries caused by asbestos-containing products that are incorporated into their products or used as replacement parts. If a plaintiff cannot establish that the asbestos-containing product added post-sale to a defendant's bare metal product was also manufactured or distributed *by that defendant*, then the plaintiff both fails to show proximate causation and succumbs to the defendant's bare metal defense. In such a case, the defendant may be granted summary judgment on the grounds of insufficient evidence of product identification and/or causation.

(Citations omitted; emphasis supplied.) J. Kennard Neal, Ga. Products Liability Law § 12:2 (4th ed. 2019). "In other words, the bare metal defense stands for the

13

proposition that a manufacturer is not liable for injuries caused by asbestos products, such as insulation, gaskets, and packing, that were incorporated into their products or used as replacement parts, but which they did not manufacture or distribute." (Citation and punctuation omitted.) *Thurmon v. A.W. Chesterton, Inc.*, 61 FSupp.3d 1280, 1284 (II) (B) (2) (N.D. Ga. 2014), aff'd sub nom. *Thurmon v. Ga. Pacific, LLC*, 650 FApp'x 752 (11th Cir. 2016).

In Georgia, our threshold requirement that plaintiffs prove proximate causation by showing exposure to a particular manufacturer's asbestos-containing product "impliedly recognizes the bare metal defense." J. Kennard Neal, Ga. Products Liability Law § 12:2 (4th ed. 2019). Thus, in *Thurmon*, although acknowledging that the bare metal defense has not been *expressly* adopted in Georgia, the federal district court applied Georgia law and found that the defense precluded claims for negligent design and negligent failure to warn against a valve manufacturer because it had not manufactured the valve's asbestos-containing component and replacement parts. 61 FSupp.3d at 1286-1287 (II) (B) (3). We find the reasoning of *Thurmon* persuasive, and adopt it here.[9]

_____

[9] It is worth noting that the federal court based its analysis, in part, on an unpublished decision of this Court, *Toole v. Ga. Pacific, LLC*, 2011 WL 7938847 (Jan. 19, 2011) (Case No. A10A2179), in which we held that the manufacturer of a

14

Accordingly, because Appellant has failed to satisfy the threshold burden to show Davis was exposed to asbestos contained in the original Peerless pumps or in replacement parts manufactured by Peerless/FMC, the trial court properly granted summary judgment to FMC on the negligent design claim. See *Hoffman*, 248 Ga. App. at 610 (2) ("Although the plaintiff is entitled to the benefit of all reasonable inferences to be drawn from the evidence, such inferences cannot be based on mere conjecture or possibility or upon evidence which is too uncertain or speculative.") (citation and punctuation omitted).

(b) Negligent Failure to Warn

Appellant contends that FMC had a duty to warn because it was foreseeable that the Peerless pumps would require asbestos-containing replacement parts over time. Indeed, a negligent failure to warn claim generally rests on issues of foreseeability. See, e.g., *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1) (450 SE2d 208) (1994) ("In failure to warn cases, the duty to warn arises whenever the manufacturer knows or reasonably should know of the danger arising from the use of

tractor was entitled to summary judgment on the issue of product identification in the absence of evidence that the plaintiff was exposed to asbestos-containing parts that were either the original parts of the tractor or replacement parts manufactured by the tractor company. Id. at *7 (6).

its product.") (citations omitted); see also *Wilson Foods Corp. v. Turner*, 218 Ga. App. 74, 75 (1) (460 SE2d 532) (1995). However, Appellant seeks to expand the traditional duty to warn so as to require a manufacturer to warn of the hazards in *another* manufacturer's product. This has never been the law in Georgia, and we decline to expand our case law in this respect.

Moreover, proximate causation is a necessary element of a failure to warn claim. *Wilson Foods Corp.*, 218 Ga. App. at 75 (1). Therefore, in order to withstand summary judgment, Appellant was required to show that Davis was exposed to a "particular defendant's products." *Thurmon*, 61 FSupp.3d at 1284 (II) (B) (2) (summary judgment warranted on claims for negligent design and negligent failure to warn where manufacturer was not liable for third-party's asbestos-containing products). Accordingly, in light of our analysis in Division 2 (a) above, the trial court properly granted summary judgment to FMC on this claim.

*Judgment reversed in Case No. A19A1137. Judgment affirmed in Case No. A19A1138. Doyle, P. J., and Coomer, J., concur.*