A11A2025. UNION CARBIDE CORPORATION et al.
v. FIELDS et al.
A11A2026. KUHLMAN ELECTRIC CORPORATION
v. FIELDS et al.
(726 SE2d 521)

MILLER, Judge.

This appeal arises from a pending products liability lawsuit that plaintiffs/appellees Rhonda and Gary Fields filed against a number of manufacturers, suppliers, and sellers of certain asbestos-containing products, including defendants/appellants Union Carbide Corporation ("Union Carbide"), Georgia-Pacific, LLC ("Georgia-Pacific"), CBS Corporation, a Delaware Corporation, f/k/a Viacom, Inc., Successor by Merger to CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation ("CBS-Westinghouse"), and Kuhlman Electric Corporation ("Kuhlman") (collectively, "Defendants"). The Fieldses moved for partial summary judgment on the issue of nonparty fault, seeking to preclude Defendants from presenting the potential fault of numerous nonparty entities for purposes of apportioning Defendants' potential damages. The trial court granted the Fieldses' motion. Union Carbide, Georgia-Pacific, and CBS-Westinghouse appeal this ruling in Case No. A11A2025;[1] Kuhlman appeals the same partial summary judgment ruling in Case No. A11A2026. As Kuhlman's appeal in Case No. A11A2026 presented the same issue for review, this Court granted Kuhlman's motion to consolidate with Case No. A11A2025. Union Carbide also includes an additional enumeration of error in Case No. A11A2025, in which it challenges the denial of its motion for summary judgment on the grounds that the Fieldses failed to present admissible expert testimony establishing that Union Carbide's product was the cause of Mrs. Fields' mesothelioma. For the foregoing reasons, we (1) affirm

---

[1] We note that this Court granted General Electric Company's motion to withdraw its appeal from Case No. A11A2025.

the grant of the Fieldses' motion for partial summary judgment and (2) affirm the denial of Union Carbide's motion for summary judgment.

> The standards for reviewing summary judgments are settled. Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c). Thus, to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law. . . . Where a . . . [moving party] discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

> Moreover, on appeal from the denial or grant of summary judgment, the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations and punctuation omitted.) *Gallagher v. Buckhead Community Bank*, 299 Ga. App. 622, 623 (683 SE2d 50) (2009).

So viewed, the record shows that Mrs. Fields allegedly contracted peritoneal mesothelioma as a result of her childhood exposure to asbestos dust from various sources. These sources included her father's work clothing — the Fieldses allege that her father was exposed to asbestos-containing products during his 1966 to 1988 employment with Georgia Power Company. Another alleged source of exposure was a joint compound product used in the 1973 construction of Mrs. Fields' family home. The Fieldses also asserted that Mrs. Fields was exposed to asbestos from her family's performance of automotive brake work. In their complaint, the Fieldses alleged that Defendants, along with a number of other companies, were responsible for either mining, manufacturing, processing, importing, converting, compounding, selling, or distributing the asbestos-containing products to which Mrs. Fields was exposed.

1. *Fieldses' Motion for Partial Summary Judgment.* In their respective answers, each Defendant in this case affirmatively pled the defense of nonparty fault, seeking to attribute fault to nonparties to the litigation instead of themselves. Pursuant to a 2005 amendment, Georgia law permits the allocation of fault to a nonparty for purposes of apportioning damages among the named defendants. See OCGA § 51-12-33 (c) ("In assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit."); see also *Custer v. Terex Corp.*, 196 Fed. Appx. 733, 737-738 (III) (A) (1) (11th Cir. 2006) (noting that subsection (c) of OCGA § 51-12-33 amended Georgia's comparative negligence statute to permit the allocation of fault to a nonparty). "Assessments of percentages of fault of nonparties shall be used only in the determination of the percentage of fault of named parties," and findings of fault against a nonparty "shall not subject any nonparty to liability in any action or be introduced as evidence of liability in any action." (Punctuation omitted.) OCGA § 51-12-33 (f) (1), (2). Thus, under this State's statutory scheme, the effect of a successful nonparty defense is the reduction of the plaintiff's potential award and the defendant's possible liability. As with other affirmative defenses, Defendants have the burden at trial to prove the defense of nonparty fault. Cf. *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 691 (2) (458 SE2d 876) (1995) (indicating that a defendant has the burden at trial to prove affirmative defenses of contributory and comparative negligence).

Here, as required by OCGA § 51-12-33 (d),[2] Defendants filed their respective notices of nonparties at fault. The Fieldses moved for partial summary judgment regarding Defendants' nonparty defense as it pertained to 51 entities designated in Defendants' notices. The Fieldses asserted that the Defendants had failed to produce any evidence creating a jury question as to whether these nonparties were responsible for any asbestos-containing products to which Mrs. Fields was exposed. The trial court granted the Fieldses' motion with respect to 45 specific entities, as well as any other nonparty identified

---

[2] OCGA § 51-12-33 (d) provides as follows:

(d) (1) Negligence or fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty or if a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault.

(2) The notice shall be given by filing a pleading in the action designating the nonparty and setting forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing the nonparty to be at fault.

or described in Defendants' notices of nonparty fault; as a result, the jury will be precluded from assessing the potential fault of these nonparties for the purposes of apportioning damages among Defendants. Defendants appeal the trial court's ruling only with respect to the following 16 nonparty entities: Georgia Power Company ("Georgia Power"); Ford Motor Company ("Ford"); Genuine Parts Company ("Genuine Parts"); Chrysler LLC ("Chrysler"); General Motors ("GM"); Central Moloney, Inc. ("Central Moloney"); Nehring Electrical Works Company ("Nehring"); Phelps Dodge Cable & Wire ("Phelps Dodge"); Southern States LLC ("Southern States"); Southwire Company ("Southwire"); Asbestos Corporation Ltd. ("Asbestos Corp."); Atlas Asbestos ("Atlas"); Johnson Mines; Keasby & Mattison ("Keasby"); Nicolet Industries ("Nicolet"); and Pacific Asbestos.

At the summary judgment stage, the Fieldses, as the moving parties, had the initial burden of piercing Defendants' affirmative defense, including that of nonparty fault. See *Clay v. Oxendine*, 285 Ga. App. 50, 56 (1) (645 SE2d 553) (2007). The burden then shifted to Defendants to set forth facts showing that there was a genuine issue for trial. Id. "Where the evidence of record pierced appellants' defensive pleadings and appellants failed to demonstrate that any issue of fact remains with regard to those defenses, it was not error to grant appellees summary judgment for any reasons urged on appeal." (Citation and punctuation omitted.) Id.

(a) *Georgia Power*. Defendants assert that it was error for the trial court to grant the Fieldses' summary judgment motion as to nonparty Georgia Power, asserting that even if Georgia Power owed no legal duty to Mrs. Fields, it could still be at fault for purposes of apportioning damages under OCGA § 51-12-33 (c). We disagree.

Pursuant to OCGA § 51-12-33 (c), "the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit." This Court recently applied this statute in *Barnett v. Farmer*, 308 Ga. App. 358, 362 (2) (707 SE2d 570) (2011), and held that the negligence of a nonparty was properly considered where there was evidence from which the jury could conclude that both the nonparty and the defendant were negligent, despite the fact that the nonparty was immune from suit and could not be named as a party. Here, however, Defendants cannot present any evidence from which a jury could conclude that Georgia Power was at fault. Georgia Power was the entity that employed Mrs. Fields' father during the relevant time period. And in Georgia, an employer owes no "duty of care to a third-party, non-employee, who comes into contact with its employee's asbestos-tainted work clothing at locations away from the workplace." *CSX Transp. v. Williams*, 278

Ga. 888, 891 (608 SE2d 208) (2005). "In the absence of a legally cognizable duty, there can be no fault or negligence." (Citation omitted.) *Ford Motor Co. v. Reese*, 300 Ga. App. 82, 84 (1) (a) (684 SE2d 279) (2009). Thus, Georgia Power bore no "fault" that could be assessed under OCGA § 51-12-33, and it was proper to grant summary judgment on Defendants' nonparty defense as it pertained to Georgia Power.

(b) *Ford and Genuine Parts.* Defendants assert that it was error for the trial court to grant summary judgment on their nonparty defense as it pertained to the potential fault of Ford and Genuine Parts. Defendants specifically contend that (i) settled entities should be automatically included on the verdict form for purposes of apportioning fault among defendants; or in the alternative, (ii) they presented sufficient evidence to survive summary judgment on their nonparty defense as it pertained to the potential fault of Ford and Genuine Parts.

(i) Pursuant to OCGA § 51-12-33 (d) (1), the "[n]egligence or fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty or if a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault." According to Defendants, the language of OCGA § 51-12-33 (d) (1) "singles out settled parties" and requires the automatic consideration of their fault for purposes of apportioning damages among Defendants. Defendants' interpretation of the statute is erroneous. See *Six Flags Over Ga. v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003) ("Where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden.") (citation omitted); *ALLTEL Ga. Communications Corp. v. Ga. Public Svc. Comm.*, 270 Ga. 105, 107 (505 SE2d 218) (1998) (viewing statute "as a whole to construe all parts of a statute together to make all its parts harmonize") (citation, punctuation and footnote omitted). By its plain terms, a nonparty's fault "shall be considered" in either of the two situations — either where the nonparty has settled with the plaintiff or where the nonparty has been identified by the defendant in a timely and proper notice of fault.[3] See OCGA § 51-12-33 (d) (1). Moreover, when OCGA § 51-12-33 (d) (1) is read together with OCGA § 51-12-33 (c), a defending party still must show that a settled entity "contributed to the alleged injury or damages" before its fault can be assessed by a trier

---

[3] That is, "[t]he notice shall be given by filing a pleading in the action designating the nonparty and setting forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing the nonparty to be at fault." OCGA § 51-12-33 (d) (2).

of fact. Otherwise, there would be no basis for the apportionment of fault between the settled entity and the defendant. See *McReynolds v. Krebs*, 307 Ga. App. 330, 334 (1), 335 (3) (705 SE2d 214) (2010) (rejecting defendant's contention that trier of fact should have apportioned damages between her and a settled party where the defendant presented no evidence on which apportionment of liability could be based and thus waived any issue with regard to the verdict form). We therefore decline to interpret OCGA § 51-12-33 (d) (1) as requiring a trier of fact to automatically consider the potential fault of a settled entity.

Defendants nevertheless contend that the trial court's refusal to automatically include settled entities on the verdict form will lead to impermissible double recovery. We disagree. If a settled entity is not included on the verdict form because there was no evidence that the settled entity in fact contributed to the plaintiff's injury, then it cannot be said that a plaintiff will have received double recovery for that injury. See *Broda v. Dziwura*, 286 Ga. 507, 509 (689 SE2d 319) (2010) ("Basic fairness and justice dictate that a tortfeasor should not benefit from a plaintiff's good fortune in reaching settlements with other potential defendants not determined to be liable.") (citation and punctuation omitted).

(ii) Defendants alternatively contend that they presented sufficient evidence to defeat the Fieldses' motion for partial summary judgment with respect to Ford and Genuine Parts. Again, we disagree.

As explained in the above subdivision, the fault of a nonparty cannot be considered for the purposes of apportioning damages without some competent evidence that the nonparty in fact "contributed to the alleged injury or damages." OCGA § 51-12-33 (c).[4] Given this focus on the concept of causation in OCGA § 51-12-33 (c), we turn to the causation standards imposed upon a plaintiff in an asbestos product liability case. Under Georgia law,

> the threshold for every theory is proof [i.e., strict liability or negligence] that an injured plaintiff was exposed to asbestos-containing products for which the defendant is responsible. That is, the plaintiff must present evidence that a particular defendant's asbestos-containing product was used at the job site and that the plaintiff was in proximity to that product at the time it was being used.

---

[4] If it were otherwise, we agree with the appellees that there would be no limitation on the number of potential nonparties that a trial court would be required to include on the verdict form for purposes of assessing fault under OCGA § 51-12-33 (c).

(Citation, punctuation and footnotes omitted.) *Hoffman v. AC&S, Inc.*, 248 Ga. App. 608, 611 (2) (548 SE2d 379) (2001); accord *Adamson v. Gen. Elec. Co.*, 303 Ga. App. 741, 744 (3) (694 SE2d 363) (2010) ("To survive summary judgment, the appellant needed to present evidence that the manufacturer defendants' asbestos-containing product was used at the location of [the plaintiff's] employment and that he was in proximity to that product at the time it was being used.") (citation and punctuation omitted). "A plaintiff may testify to this information from personal knowledge; he may also meet this burden other ways, including by offering the testimony of a co-worker who can identify the plaintiff by name as having worked with or around a particular defendant's asbestos-containing products." (Citation and punctuation omitted.) *Adamson*, supra, 303 Ga. App. at 744 (3). Beyond this threshold requirement, a plaintiff must also make a showing of specific causation, i.e., whether a substance caused a particular individual's injury. *Butler v. Union Carbide Corp.*, 310 Ga. App. 21, 25 (1), 31 (2) (712 SE2d 537) (2011). "Absent reliable expert testimony that exposure to a [company's] product contributed to the development of [plaintiff's] mesothelioma, there is insufficient evidence to create a jury issue as to causation." (Footnote omitted.) Id. at 30 (2).

In response to the Fieldses' motion for summary judgment, Defendants point to deposition testimony showing that Mrs. Fields was exposed to brake work performed on her family's vehicles, and that some of the vehicles were manufactured by Ford. Despite Mrs. Fields' lack of knowledge as to whether asbestos was contained in any vehicles or products utilized during her family's brake work, Defendants rely upon testimony of the Fieldses' expert, who identified brake work by Mrs. Fields' father as one source of her asbestos exposure.

Defendants' designated evidence, however, does not show whether Mrs. Fields was exposed to any Ford vehicles or Genuine Parts products that in fact contained asbestos. See *Hoffman*, supra, 248 Ga. App. at 611 (2). Nor do Defendants specify any evidence showing that either Ford or Genuine Parts manufactured or supplied products that contributed to the development of Mrs. Fields' mesothelioma. See *Butler*, supra, 310 Ga. App. at 25 (1). Defendants instead rely on an inference that Ford vehicles and Genuine Parts products contributed to Mrs. Fields' mesothelioma. "When a party is relying on inferences to prove a point, not only must those inferences tend in some proximate degree to establish the conclusion sought, but must also render less probable all inconsistent conclusions." (Citations and punctuation omitted.) *Adamson*, supra, 303 Ga. App. at 747 (3) (c).

Here, however, Defendants' evidence does not render less probable the possibility that Mrs. Fields was exposed solely to Ford and Genuine Parts nonasbestos products. Cf. id. at 746-747 (3) (b), (c) ("Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment.") (citation and punctuation omitted). Thus, we conclude that Defendants failed to demonstrate that any issue of fact remained as to whether Ford or Genuine Parts contributed to the Fieldses' injury or damages as was required to assess those entities' potential fault under OCGA § 51-12-33 (c). Therefore, it was not error to grant summary judgment on Defendants' nonparty defense as it pertained to Ford and Genuine Parts.

(c) *Chrysler and GM.* Defendants likewise assert that there was sufficient evidence, in the form of deposition testimony, to defeat summary judgment on their nonparty defense as it pertained to the potential fault of nonparties Chrysler and GM. We disagree.

Defendants contend that the same evidence offered for the above-mentioned settled entities (Ford and Genuine Parts) establishes that Mrs. Fields was exposed to asbestos through her family's brake work on vehicles that included those manufactured by Chrysler and GM. As with Ford and Genuine Parts, however, Defendants have not introduced any evidence to show whether the Chrysler and GM vehicles or products to which Mrs. Fields was allegedly exposed in fact contained asbestos. Defendants again rely on an inference that Chrysler and GM products contributed to Mrs. Fields' mesothelioma; but the evidence does not render less probable the possibility that Mrs. Fields was exposed solely to Chrysler and GM nonasbestos products. Cf. *Adamson,* supra, 303 Ga. App. at 747 (3) (c) ("The appellant relies solely on an inference that [company's] products constitute[d] a proximate cause of [the plaintiff's] injury; and the evidence does not render less probable the possibility that [the plaintiff] worked solely with [the company's] nonasbestos products.") (footnote omitted). Thus, Defendants failed to present evidence sufficient to create a triable issue of fact as to whether Chrysler or GM contributed to the Fieldses' injury or damages as was required to assess those entities' potential fault under OCGA § 51-12-33 (c). The trial court did not err in granting partial summary judgment on Defendants' nonparty defense as it pertained to Chrysler and GM.

(d) *Central Moloney, Nehring, Phelps Dodge, Southern States, and Southwire.* Defendants assert that they presented sufficient evidence, in the form of allegations contained in the Fieldses' com-

plaint and in Mrs. Fields' sworn information form,[5] to preclude summary judgment on their nonparty defense as it pertained to the potential fault of nonparties Central Moloney, Nehring, Phelps Dodge, Southern States, and Southwire. We disagree.

Defendants specifically point to the fact that the Fieldses named Central Moloney, Nehring, Southern States, and Southwire in their original complaint, and then alleged in their complaint that all named defendants manufactured or supplied products that exposed Mrs. Fields to asbestos.[6] Defendants also rely upon allegations in Mrs. Fields' sworn information form that she had been exposed to asbestos emanating from products manufactured by Central Moloney, Nehring, Phelps Dodge, Southern States, and Southwire.

As an initial matter, unverified allegations in a plaintiff's complaint are generally not evidence for purposes of defeating summary judgment. See *Jones v. City of Willacoochee*, 299 Ga. App. 741, 742 (683 SE2d 683) (2009). Nor are allegations in a verified complaint. See *Fletcher v. Hatcher*, 278 Ga. App. 91, 93 (2) (628 SE2d 169) (2006) ("We do not consider the allegations in plaintiffs' verified complaint to be evidence, because the verification therein was based on 'the best of plaintiffs' knowledge and belief.'") (punctuation omitted). "As personal knowledge (not belief) is required in a verification for summary judgment purposes, plaintiffs' complaint contains mere allegations and not sworn statements." (Citation and footnote omitted.) Id. Mrs. Fields' sworn information form is no different than a verification form submitted in support of a complaint — that is, Mrs. Fields' form explicitly stated that the information contained therein was based upon the "best of her knowledge and belief."

Moreover, even to the extent that Defendants could avail themselves of the foregoing allegations, see OCGA § 24-3-30, this evidence alone was not sufficient to defeat summary judgment on Defendants' nonparty defense as it pertained to the potential fault of Central Moloney, Nehring, Phelps Dodge, Southern States, and Southwire. Notably, beyond the above-referenced allegations contained in the Fieldses' complaint and in Mrs. Fields' sworn information form, Defendants have not offered any evidence, expert or otherwise, showing that Mrs. Fields' alleged exposure to these five nonparties' products in fact contributed to the development of Mrs. Fields'

---

[5] This sworn information form was included with the Fieldses' complaint as is required by OCGA § 51-14-7 in all asbestos claims.

[6] Each of these four entities was eventually omitted as a named defendant in the Fieldses' subsequent amended complaints.

mesothelioma.[7] See *Butler*, supra, 310 Ga. App. at 25 (1). Without any such specific causation evidence, Defendants failed to raise an issue of material fact as to whether these five nonparties may have in fact contributed to the Fieldses' injury or damages as was required to assess those nonparties' potential fault under OCGA § 51-12-33 (c). Therefore, it was not error to grant partial summary judgment on Defendants' nonparty defense as it pertained to Central Moloney, Nehring, Phelps Dodge, Southern States, and Southwire.

(e) *Asbestos Corp., Atlas, Johnson Mines, Keasby, Nicolet, and Pacific Asbestos.* Defendants assert that there was sufficient evidence to defeat summary judgment with respect to their nonparty defense as it pertained to the potential fault of nonparties Asbestos Corp., Atlas, Johnson Mines, Keasby, Nicolet, and Pacific Asbestos. We disagree.

Defendants specifically point to record evidence showing that United States Gypsum Company ("U. S. Gypsum") manufactured a joint compound product that contained asbestos, and that Mrs. Fields was exposed to asbestos dust from U. S. Gypsum's joint compound during the construction of her family home. Defendants rely upon U. S. Gypsum's interrogatory response, which identifies, among other companies, Asbestos Corp., Atlas, Johnson Mines, Nicolet, and Pacific Asbestos as companies known to have been approved suppliers of asbestos to U. S. Gypsum. Defendants contend simply that "[i]f Mrs. Fields was exposed to asbestos contained in the [U. S. Gypsum] joint compound, it is certainly reasonable to infer that she more than likely was exposed to the asbestos supplied by the respective nonparties." As discussed above, however, "[w]hen a party is relying on inferences to prove a point, not only must those inferences tend in some proximate degree to establish the conclusion sought, but must also render less probable all inconsistent conclusions." (Citation and punctuation omitted.) *Adamson*, supra, 303 Ga. App. at 747 (3) (c). Defendants have not succeeded in showing such here. Indeed, the same interrogatory response upon which Defendants rely also shows that the nonparties were among several other suppliers and that U. S. Gypsum lacked knowledge as to which company supplied the asbestos for each of U. S. Gypsum's particular products, at which

---

[7] We note that during the summary judgment hearing, Defendants also pointed to certain portions of Jerry Johnson's (Mrs. Fields' father) deposition testimony as additional evidence of fault on the part of nonparties Phelps Dodge and Southwire. However, while the designated testimony shows that Johnson may have used cable manufactured by Phelps Dodge, it does not demonstrate that Phelps Dodge made any asbestos-containing cable that in fact contributed to Mrs. Fields' mesothelioma. Nor does the designated deposition testimony establish that Southwire manufactured any asbestos-containing cables that in fact contributed to Mrs. Fields' mesothelioma.

mines the raw asbestos was mined, or from which locations the asbestos was shipped. U. S. Gypsum's interrogatory response also indicated that suppliers Atlas and Pacific Asbestos shipped only to California. Thus, Defendants' evidence does not render less probable the possibility that neither Asbestos Corp., Atlas, Johnson Mines, Nicolet, nor Pacific Asbestos, as compared to U. S. Gypsum's other asbestos suppliers, supplied the asbestos that U. S. Gypsum used to manufacture the joint compound product that was then utilized by the Fieldses in the construction of their family home. Thus, Defendants failed to demonstrate that any issue of fact remained as to whether these five nonparty entities contributed to the Fieldses' injury or damages as was required to assess those entities' potential fault under OCGA § 51-12-33 (c). Therefore, it was not error to grant summary judgment on Defendants' nonparty defense as it pertained to Asbestos Corp., Atlas, Johnson Mines, Nicolet, and Pacific Asbestos.

2. *Union Carbide's Motion for Summary Judgment.* Mrs. Fields was allegedly exposed to Union Carbide's Calidria asbestos contained in certain joint compound products used in the 1973 construction of Mrs. Fields' family home. The record evidence shows that from 1963 through 1985, Union Carbide mined and milled chrysotile asbestos and sold it under the trade name, "Calidria." According to the record evidence, there are two major families of asbestos fiber — amphibole and serpentine. Chrysotile asbestos is in the serpentine family, and all other types of asbestos minerals are in the amphibole family. The record contains expert testimony reflecting that amphibole asbestos can cause mesothelioma. With respect to chrysotile asbestos, however, Union Carbide argued that there was a lack of scientific foundation showing that it can cause mesothelioma. Union Carbide thus moved under *Daubert v. Merrill Dow Pharmaceuticals,* 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993), to preclude the Fieldses' experts from testifying on that point. The trial court entered an order granting Union Carbide's *Daubert* motion and prohibiting the Fieldses' expert witnesses "from testifying as to their opinion that pure chrysotile asbestos can cause peritoneal mesothelioma."[8]

Union Carbide moved for summary judgment, asserting that the trial court's *Daubert* order effectively excluded all of the Fieldses' scientific evidence of specific causation. The trial court denied Union Carbide's motion for summary judgment, finding that the scientific evidence appeared to show that chrysotile, when combined with other types of asbestos to which Mrs. Fields was exposed, could cause her

---

[8] We note that the trial court's *Daubert* ruling is not at issue on appeal.

mesothelioma. Union Carbide appeals. Concluding that there was sufficient evidence to create a jury issue as to causation, however, we affirm the trial court's denial of summary judgment.

> A defendant may obtain summary judgment by showing that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . Causation is an essential element of a toxic tort case, and proof of causation in such cases generally requires reliable expert testimony. Absent reliable expert testimony that exposure to a [company's] product contributed to the development of [plaintiff's] mesothelioma, there is insufficient evidence to create a jury issue as to causation.

(Punctuation and footnotes omitted.) *Butler*, supra, 310 Ga. App. at 30 (2).

Here, in opposition to Union Carbide's motion for summary judgment, the Fieldses contended that despite the trial court's *Daubert* order, a genuine issue of material fact still remained as to whether chrysotile asbestos, when combined with exposure to other asbestos fibers, can cause mesothelioma. The Fieldses rely on deposition testimony of their expert, opining that exposure to chrysotile and amphiboles together can cause an increased incidence of mesothelioma. The record also reflects affidavit testimony from Union Carbide's expert stating that mesothelioma is caused by the total dose of asbestos, regardless of the fiber type, that the patient experiences.

Union Carbide attempts to overcome this evidence by arguing that there is no scientific foundation for the Fieldses' purported "mixed exposure" theory of causation. To the extent that Union Carbide is contending that the Fieldses' expert testimony on this point did not meet the reliability requirements of OCGA § 24-9-67.1 (b) and *Daubert*, however, the record does not show that Union Carbide raised this objection in the court below or that it was ruled upon by the trial court. Cf. *Mays v. Ellis*, 283 Ga. App. 195, 199 (2) (641 SE2d 201) (2007). Accordingly, Union Carbide cannot raise this issue on appeal. Cf. id. Significantly, it is the role of the trial court, and not this Court, to act as a gatekeeper in determining the admissibility of an expert opinion. See *Burroughs v. Mitchell County*, 313 Ga. App. 8, 14 (2) (b) (720 SE2d 335) (2011). Moreover, "we note that, under *Daubert*, disputes as to an expert's credentials are properly explored through cross-examination at trial and go to the weight and credibility of the testimony, not its admissibility." (Citation and punctuation omitted.) *Mays*, supra, 283 Ga. App. at 199 (2), n. 3.

Union Carbide further contends that even assuming a "mixed exposure" causation theory was based on reliable expert testimony, there is no evidence that Mrs. Fields was exposed to amphibole asbestos. In support, Union Carbide points to the testimony of the Fieldses' expert indicating that, based solely upon his review of the Fieldses' allegations of exposure and not his own personal knowledge, this case appeared to be one involving chrysotile exposure. However, this testimony does not conclusively demonstrate the absence of a genuine issue of material fact. To the contrary, the Fieldses' expert also testified that given the various sources of asbestos to which Mrs. Fields was exposed, it was "difficult for [him] to really sort out whether or not there was . . . mixed exposure or chrysotile only exposure." "[S]uch contradictions go solely to the expert's credibility, and are to be assessed by the jury when weighing the expert's testimony." (Punctuation and footnote omitted.) *Thompson v. Ezor*, 272 Ga. 849, 853 (2) (536 SE2d 749) (2000).

Thus, in light of the expert testimony that exposure to Union Carbide's product, when combined with other asbestos fibers, could have contributed to Mrs. Fields' mesothelioma, the Fieldses have demonstrated the existence of a genuine issue for trial as to causation. Therefore, the trial court properly denied Union Carbide's motion for summary judgment.

*Judgments affirmed. Ellington, C. J., and Doyle, P. J., concur.*

DECIDED MARCH 20, 2012 —
RECONSIDERATIONS DENIED APRIL 12, 2012 — ▮▮▮▮▮▮▮▮

*Alston & Bird, William C. Massey, Evert, Weathersby & Houff, Ivan A. Gustafson, Frances L. Spinelli, Chilivis, Cochran, Larkins & Bever, John D. Dalbey, Nelson, Mullins, Riley & Scarborough, Lee Ann S. Anand*, for appellants (case no. A11A2025).

*Taylor, English & Duma, Alison M. Ballard*, for appellant (case no. A11A2026).

*Robert C. Buck*, for appellee.