BRANCH, Judge,
dissenting.
If Imelda Zaldivar had sued Prickett for her own injuries that resulted from the accident, she would be authorized under Georgia law to name Overhead Door as a defendant and recover damages from Overhead Door if she could prove her claim that Overhead Door knowingly entrusted a truck to a reckless driver, i.e., Prickett, and that Overhead Door’s negligence combined with Prickett’s negligence resulting from his recklessness. See, e.g., Dougherty Equip. Co. v. Roper, 327 Ga. App. 434, 438 (2) (757 SE2d 885) (2014). And if Zaldivar had filed suit but only named Prickett as a defendant, Prickett could name Overhead Door — his own employer — as a nonparty under the Georgia apportionment statute, and try to reduce his own liability for Zaldivar’s damages by attempting to assign a percentage of fault for Zaldivar’s injuries to Overhead Door by claiming that his own employer negligently entrusted him with the truck. Yet even though Prickett’s injuries resulted from the same accident, the majority holds that because Prickett is the plaintiff, Zaldivar is prohibited from making the same assertion that Overhead Door was at least partially responsible for the accident that caused Prickett’s injuries. To reach this result, the majority reads out of the Georgia apportionment statute, the “ordinary and everyday meaning” of “fault” used in that statute, which the Supreme Court has explained, is how the term should be construed. For these reasons, I respectfully dissent.
Under OCGA § 51-12-33, the trier of fact in this case will be required to determine the percentage of “fault” of Prickett, Zaldivar *364 and any nonparty who could be deemed at least partially “at fault” for Prickett’s injuries. Specifically, under subsection (a), the trier of fact is required to “determine the percentage of fault of the plaintiff.” And subsection (c) provides that, “[i]n assessing percentages of fault,” the trier of fact is required to consider “the fault of all persons or entities who contributed to the alleged injury or damages[.]” These determinations necessarily will impact Zaldivar’s own percentage of fault. The critical issue in this case is whether Overhead Door can be considered a person whose “fault” “contributed to [Prickett’s] alleged injury,” such that the trier of fact should consider that fault when determining Prickett’s own percentage of fault as well as Zaldivar’s.
First, it is important to note that any determination of whether Overhead Door can be assessed a percentage of fault has nothing to do with assigning liability to Overhead Door for Prickett’s injuries. Indeed, that would be expressly forbidden by the apportionment statute. Subsection (f) explains that “[assessments of percentages of fault of nonparties shall be used only in the determination of the percentage of fault of named parties.” (Emphasis supplied.) The subsection goes on to provide that “[w]here fault is assessed against nonparties pursuant to this Code section, findings of fault shall not subject any nonparty to liability in any action or be introduced as evidence of liability in any action.” (Emphasis supplied.) Thus the legislature has specifically insulated nonparties who are “assessed a percentage of fault” from having that assessment used against them in any way. The legislature also has provided that a nonparty can be assessed a percentage of fault “regardless of whether the person or entity was, or could have been, named as a party to the suit.” OCGA § 51-12-33 (c). These provisions show that the plain language of the statute does not equate the concept of “fault,” as that term is used in the apportionment statute, with tort liability.
The Supreme Court of Georgia’s construction of the term “fault” as used in the statute supports this conclusion. See Couch v. Red Roof Inns, 291 Ga. 359 (1) (729 SE2d 378) (2012). In Couch, the Supreme Court examined the meaning of the term “fault” as found in OCGA § 51-12-33 as a part of determining, in a premises liability action with one defendant, that the jury should be allowed to consider the fault of a nonparty criminal assailant and to “apportion”[3] its award of damages between the property owner and the criminal assailant. The court reasoned that “since ‘fault’ is not a term of art, but is a word of *365 general use, it is to be given its ordinary and everyday meaning,’ ” the meaning is “broad,” and “includes ‘conduct done wrongly or negligently.’ ” Id. at 361, 362 (1) (emphasis supplied). Thus “fault is not meant to be synonymous with negligence, but instead includes other types of wrongdoing.” Id. Thus, both Couch and the plain meaning of OCGA § 51-12-33 support the conclusion that the statute considers two fundamentally different concepts: percentages of fault, in its general sense, for all who contributed to the plaintiff’s injuries; and legal liability for named parties.
Following the language of the apportionment statute and the reasoning of the Supreme Court, I would conclude that in addition to the concept of legal liability, the “fault” that is to be considered by the trier of fact when assessing percentages of fault under the apportionment statute is sufficiently broad to include the degree to which Overhead Door can be said to have caused the accident that resulted in Prickett’s injuries even though Overhead Door could have no liability to Prickett himself.
Under the tort of negligent entrustment, “a party is liable if he entrusts someone with an instrumentality, with actual knowledge that the person to whom he has entrusted the instrumentality is incompetent by reason of his age or inexperience, or his physical or mental condition, or his known habit of recklessness.” Gunn v. Booker, 259 Ga. 343, 347 (3) (381 SE2d 286) (1989) (citations and footnote omitted). See also Ridgeway v. Whisman, 210 Ga. App. 169 (435 SE2d 624) (1993). Importantly, negligent entrustment is not a form of vicarious liability; rather, it is an independent wrongful act that can combine with the negligence of the entrustee:
The liability of the owner in a negligent entrustment action does not result from imputing the negligence of the incompetent driver to the owner [;] rather “negligent entrustment of a motor vehicle to an incompetent driver is an independent wrongful act of the vehicle’s owner which is a concurrent, proximate cause of injury when it combines with the negligence of the operator.”
Ridgeway, 210 Ga. App. at 170, quoting Adams & Adams, Ga. Law of Torts, § 12-5 (1989) (citation omitted). See also Hook v. Harmon, 315 Ga. App. 278, 279 (727 SE2d 143) (2012) (“Liability also requires proof that the entrustor’s negligence is a concurring proximate cause of the accident, along with any negligence by the entrustee arising from incompetency or recklessness.”) (citation omitted). Thus, a party can be liable for negligent entrustment without an employer-employee relationship or within such a relationship where the employee is *366 acting outside of the scope of his employment. See, e.g., Roper, 327 Ga. App. at 438 (2) (negligent entrustment claim against employer allowed even though employee was acting outside of the scope of employment at the time of the accident).
Simply put, Overhead Door plainly has a duty not to negligently entrust others with its vehicles, and a violation of that duty can lead to accidents. The fact that an action by Prickett against Overhead Door might be barred by Prickett’s own contributory negligence or another legal doctrine does not affect this conclusion.[4] It follows that if Overhead Door knew that Prickett was incompetent to drive yet entrusted a vehicle to him despite that knowledge, it could not be said that Overhead Door was without fault — under the ordinary and everyday meaning of that term as required by Couch — for causing the accident, even if Overhead Door could not be found liable to Prickett. Overhead Door’s alleged negligent entrustment could be seen as a concurrent proximate cause of the accident even if Overhead Door could not be found liable directly to its employee. Accordingly, Overhead Door could be considered as bearing a percentage of “fault” for the accident that caused Prickett’s injuries under OCGA § 51-12-33.
This conclusion is supported by Barnett v. Farmer, 308 Ga. App. 358, 362 (2) (707 SE2d 570) (2011) (physical precedent only), a suit with only one defendant, in which Mr. and Mrs. Farmer brought suit against Barnett, and both plaintiffs and defendant claimed the other ran a red light. Id. Barnett requested that the court charge the jury on apportionment of Mrs. Farmer’s claims against him on the ground that Mr. Farmer, who was driving, was partially at fault for the accident and that he thereby contributed to his wife’s injuries. Id. This Court concluded that the jury should have been instructed to apportion any award of damages to Mrs. Farmer according to a determination of the percentage of fault of Barnett and co-plaintiff Mr. Farmer, if any, despite the fact that Mr. Farmer would be protected from liability in a suit by Mrs. Farmer by the interspousal tort immunity doctrine. Id. This Court reasoned:
[I]t would be contrary to the clear intent of the legislature to require Barnett to pay for the full amount of Shirley’s *367 damages for the same collision simply because she was a passenger in the car her husband was driving. . . . Our holding in no way requires Shirley to file suit against her husband, but instead, precludes her from recovering from Barnett that portion of her damages, if any, that a trier of fact concludes resulted from the negligence of her husband.
Decided July 16, 2014 —
Downey & Cleveland, Sean L. Hynes, J. Colby Jones, Andrew A. Curtright, for appellant.
Slappey & Sadd, James N. Sadd, Edward M. Wynn, for appellees.
Id. at 362 (2). This reasoning is persuasive. Here, even if Prickett has no claim against Overhead Door because of his own contributory negligence, Zaldivar should not be liable to Prickett for that portion of Prickett’s damages that a trier of fact concludes resulted from Overhead Door’s contribution to the cause of the accident.
The case of Union Carbide Corp. v. Fields is distinguishable at least in part because it was decided before Couch and it does not employ Couch’s definition of “fault.”[5] See Union Carbide Corp. v. Fields, 315 Ga. App. 554, 557 (1) (a) (726 SE2d 521) (2012) (trier of fact not authorized to apportion fault to nonparty that employed victim’s father because in Georgia, “an employer owes no duty of care to a third-party, nonemployee, who comes into contact with its employee’s asbestos-tainted work clothing at locations away from the workplace”) (citation and punctuation omitted), rev’d on separate grounds by Georgia-Pacific v. Fields, 293 Ga. 499 (748 SE2d 407) (2013).
For the above reasons, I would hold that the trial court erred by dismissing Zaldivar’s assertion of nonparty fault against Overhead Door.

 Because the criminal assailant was not a named party to the action, no literal “apportionment” of damages was authorized by subsection (b) of the statute; rather, the Supreme Court here appears to use the term “apportionment” broadly to refer to assessing the criminal assailant’s percentage of fault.

 See generally Hook, 315 Ga. App. at 279 (“[Wjhere the injured party is the entrustee, his own contributory negligence generally will bar him from recovery against the negligent entrustor.”) (citation and footnote omitted); Ridgeway, 210 Ga. App. at 170 (entrustee’s contributory negligence, or an unnamed driver’s negligence, or both, amounted to the sole proximate cause of the entrustee’s injuries; therefore the entrustor could not be liable to the entrustee’s parents for the entrustee’s injuries).

 Furthermore, in Union Carbide, as a matter of Georgia law, the nonparty at issue (Georgia Pacific) owed no duty to any named party in the suit. Here, on the other hand, Overhead Door owed a duty to the public, which necessarily includes the defendant, not to negligently entrust vehicles to its employees.